# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

MICHAEL PURTLE,

           Plaintiff,

       v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

           Defendant.

Case No. EDCV 08-1023-JTL

MEMORANDUM OPINION AND ORDER

## PROCEEDINGS

On August 12, 2008, Michael Purtle ("plaintiff") filed a Complaint seeking review of the Social Security Administration's denial of his applications for Supplemental Security Income benefits and Disability Insurance Benefits.  On September 10, 2008, plaintiff filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum.  On November 3, 2008, Michael J. Astrue, Commissioner of Social Security ("defendant"), filed a Consent to Proceed Before United States Magistrate Judge Jennifer T. Lum.  Thereafter, on February 4, 2009, defendant filed an Answer to the Complaint.  On May 1, 2009, the parties filed their Joint Stipulation.

The matter is now ready for decision.

///

///

**BACKGROUND**

On April 12, 2003, plaintiff filed an application for Disability Insurance Benefits.  On December 31, 2001, plaintiff had protectively filed an application for Supplemental Security Income benefits.  In both applications, plaintiff alleged a disability onset date of January 3, 2001, due to major depression and heart disease.  (See Administrative Record ["AR"] at 12, 44, 87-89, 97, 510).  The Commissioner denied plaintiff's applications for benefits both initially and upon reconsideration.  (AR at 44-45, 52, 59, 510, 511).

Thereafter, on July 14, 2003, an Administrative Law Judge ("ALJ") dismissed plaintiff's request for a hearing, finding that plaintiff had failed to file the request in a timely manner and had not shown good cause to extend the time for filing the request.  (See AR at 46, 48-49). Plaintiff then sought review of the dismissal.  (AR at 63, 65).  The Appeals Council granted review, finding that plaintiff's claim file did not contain a request for hearing and, thus, it could not determine whether the dismissal was supported by substantial evidence.  (AR at 68).  The Appeals Council noted that plaintiff had subsequently filed claims for Disability Insurance Benefits and Supplemental Security Income benefits on August 20, 2004, plaintiff was found to have met the requirements of Listing 12.04 of the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1, and plaintiff's disability began on August 1, 2003.  (AR at 68; see AR at 50, 66, 515).  Thus, the Appeals Council remanded the case to the ALJ with instructions to obtain the request for hearing from plaintiff, offer plaintiff an opportunity for a hearing, and issue a new decision on the issue of plaintiff's disability during the period prior to August 1, 2003.  (AR at 68-69, 51).

On December 19, 2006, the ALJ conducted a hearing in San Bernardino, California. (See AR at 521-52).  Plaintiff appeared at the hearing with counsel and testified.  (AR at 530-33, 538-44, 547-48).  A medical expert, Joseph Malancharuvil, M.D., and a vocational expert, Corinne Porter, also testified at the hearing.  (AR at 525-30, 532-37, 541-42, 544, 545-46, 547-51).  On April 19, 2007, the ALJ issued a decision denying benefits to plaintiff.  (AR at 12-21). In his decision, the ALJ determined that plaintiff had the following severe combination of impairments between January 3, 2001 and July 31, 2003, the closed period subject to review

("closed period"): a depressive disorder, not otherwise specified, an anxiety disorder, not otherwise specified, coronary artery disease, status post bypass surgery, elevated blood pressure and highly elevated cholesterol levels.  (AR at 15).  The ALJ also determined that, during the closed period, plaintiff did not have an impairment or combination of impairments that meet or equal the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1.  (Id.).  The ALJ then found that, between January 3, 2001 and July 31, 2003, plaintiff retained the physical residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk four hours in an eight-hour workday and sit without significant limitation, but was limited to occasional postural activities and was precluded from climbing ropes, ladders and scaffolds.  (Id.).  With respect to plaintiff's mental residual functional capacity during the closed period, the ALJ found that plaintiff was limited to moderately complex four and five step tasks in a habitual work environment, he was precluded from performing work in which he would be responsible for the safety of others and was precluded from performing fast-paced work, meaning work at a pace above that expected in normal work.  (Id.).  The ALJ determined that plaintiff was unable to perform his past relevant work, which was in commercial air-conditioning and refrigerator sales.  (AR at 19).  The ALJ further found that plaintiff was closely approaching advanced age, had at least a high school diploma and had no skills transferable to light or sedentary work during the closed period  (Id.). After considering plaintiff's age, education, work experience, and residual functional capacity, the ALJ concluded that jobs existed in significant numbers in the national economy that plaintiff could have performed between January 3, 2001 and July 31, 2003.  (AR at 19-20). Accordingly, the ALJ concluded that plaintiff was not disabled between January 3, 2001 and July 31, 2003.  (AR at 20-21).  The Appeals Council denied plaintiff's timely request for review of the ALJ's decision.  (See AR at 5, 8).

Thereafter, plaintiff appealed to the United States District Court.

///

///

///

**PLAINTIFF'S CONTENTIONS**

Plaintiff makes the following claims:

1.      The ALJ failed to properly develop the record.

2.      The ALJ misrepresented the record and failed to properly consider the consultative examining psychiatrist's evaluation.

3.      The ALJ failed to make proper credibility findings.

4.      The ALJ failed to properly consider plaintiff's treating psychiatrist's opinion.

5.      The ALJ failed to pose a complete hypothetical to the vocational expert.

**STANDARD OF REVIEW**

Under 42 U.S.C. Section 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and whether the proper legal standards were applied.  DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more than a mere scintilla" but less than a preponderance.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401.  This Court must review the record as a whole and consider adverse as well as supporting evidence.  Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999).  Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**DISCUSSION**

**A.      The Sequential Evaluation**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner has

1  established a five-step sequential process to determine whether a claimant is disabled.  20

2  C.F.R. §§ 404.1520, 416.920.

3        The first step is to determine whether the claimant is presently engaging in substantial

4  gainful activity.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the claimant is engaging

5  in substantial gainful activity, disability benefits will be denied.  Bowen v. Yuckert, 482 U.S. 137,

6  141 (1987).  Second, the ALJ must determine whether the claimant has a severe impairment.

7  Parra, 481 F.3d at 746.  Third, the ALJ must determine whether the impairment is listed, or

8  equivalent to an impairment listed, in Appendix I of the regulations.  Id.  If the impediment meets

9  or equals one of the listed impairments, the claimant is presumptively disabled.  Bowen, 482

10  U.S. at 141.  Fourth, the ALJ must determine whether the impairment prevents the claimant

11  from doing past relevant work.  Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).  If the

12  claimant cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and

13  must determine whether the impairment prevents the claimant from performing any other

14  substantial gainful activity.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

15        The claimant bears the burden of proving steps one through four, consistent with the

16  general rule that at all times, the burden is on the claimant to establish his or her entitlement

17  to disability insurance benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is

18  established by the claimant, the burden shifts to the Commissioner to show that the claimant

19  may perform other gainful activity.  Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir.

20  2006).

21  **B.    The ALJ's Duty to Develop the Record**

22        Plaintiff claims that the ALJ failed to properly develop the record by obtaining treatment

23  records from Romeo D. Villar, M.D., plaintiff's treating psychiatrist during the closed period

24  under review.  (Joint Stipulation at 3-5, 6-7).

25        On May 1, 2003, at the State Agency's request, Dr. Villar completed a Mental Disorder

26  Questionnaire Form, diagnosing plaintiff with "major depression[,] severe," and indicating that

27  he had treated plaintiff essentially on a monthly basis since January 18, 2001, and had last

28

1    examined plaintiff on April 29, 2003.[1]  (AR at 173-78).  Dr. Villar noted that plaintiff had initially

2    complained of depression, anxiety, anhedonia, hopelessness, helplessness, poor

3    concentration, poor memory and suicidal thoughts.  (AR at 174).  Dr. Villar opined that plaintiff's

4    "memory is poor [and] concentration is very poor," and appeared to interfere with his daily

5    tasks.  (See AR at 175).  He further opined that plaintiff's affect was "sad, dysphoric, [and]

6    occasionally agitated," and that plaintiff had complained of "low energy" and "no motivation."

7    (AR at 176).  Although Dr. Villar opined that plaintiff's reality contact was "fair," he noted that

8    plaintiff could not understand why he could not handle stress.  (Id.).  With respect to plaintiff's

9    current level of functioning, specifically, his daily activities, Dr. Villar opined that plaintiff's

10   depression affected his job and his ability to finish his tasks, and that plaintiff was "unable to

11   handle the stress he was doing prior to the illness[.]"  (Id.).  With respect to social functioning,

12   Dr. Villar opined that plaintiff's "depression interfere[s] [with] the activities he can do and like[s]

13   to do," plaintiff "does not want to be [with] friends" and "isolate[s] himself," and plaintiff did not

14   enjoy the activities he used to enjoy, such as golfing.  (See AR at 177).  With respect to

15   concentration and task completion, Dr. Villar opined that plaintiff's "concentration and attention

16   is markedly diminished as a result of depression," and plaintiff could not finish tasks, "especially

17   complicated ones."  (Id.).  Finally, with respect to plaintiff's ability to adapt to work or work-like

18   situations, Dr. Villar opined that plaintiff's "[a]daptation to work is now limited," and noted that

19   plaintiff had "tried to go back to work but was not able to handle."[2]  (Id.).

20         In his decision, the ALJ concluded that plaintiff's mental residual functional capacity was

21   limited to moderately complex four and five step tasks in a habituated work environment and

22   plaintiff was precluded from performing work in which he would be responsible for the safety

23   _____

24   [1]  Dr. Villar indicated that he had seen plaintiff on the following dates: 1/18/01; 2/16/01; 3/8/01;

25   4/5/01; 5/19/01; 6/7/01; 7/10/01; 8/10/01; 9/10/01; 10/4/01; 11/6/01; 12/7/01; 1/11/02; 2/12/02; 3/12/02; 5/9/02; 7/9/02; 9/10/02; 11/02; 1/27/03; 2/27/03; and 4/29/03.  (AR at 173).

26   [2]  Dr. Villar added, "I felt that [plaintiff] is no longer capable of doing his job prior to the illness."  (AR
     at 178).  As noted in the decision, the ALJ agreed with Dr. Villar's assessment and accepted the

27   vocational expert's testimony that plaintiff was not capable of performing his past relevant work during
     the closed period "because such work requires greater mental functioning than that permitted by

28   [plaintiff's] residual functional capacity."  (See AR at 18, 19).

1    of others and fast-paced work.  (AR at 15).  In reaching this conclusion, the ALJ accepted and

2    relied on the testimony and assessments of Joseph Malancharuvil, M.D., the medical expert

3    who testified at the December 19, 2006 hearing.  (See AR at 16-17).  At the hearing, Dr.

4    Malancharuvil testified that the record contained "mounting evidence" that plaintiff's mental

5    condition had deteriorated as of September 2004 and that he met the requirements of Listing

6    12.04 at that time.  (AR at 526).  Dr. Malancharuvil noted, however, that the record lacked

7    psychiatric evidence from January 2001 to August 2003 from which he could conclude that

8    plaintiff met the requirements of the listings during that period.  (See AR at 525-26, 527).

9    During the closed period, based on his review of the record, Dr. Malancharuvil testified that

10   plaintiff had mild limitations in his activities of daily living, and mild to moderate limitations in

11   social functioning and cognitive abilities, and that plaintiff would have been restricted to

12   "moderately complex tasks, up to four to five-step instructions in a relatively habituated

13   environment with no demand for safety operations or fast-paced work[.]"  (See AR at 526-27).

14   Dr. Malancharuvil testified that he believed plaintiff had received treatment and was taking

15   medication during the closed period, but, if his memory served him correctly, the treatment was

16   "much less aggressive" compared to the aggressive treatment he received in 2005 and

17   thereafter. (See AR at 529-30, 532).

18        The ALJ noted that Dr. Malancharuvil had "testified that there was a lack of psychiatric

19   evidence, generally, and a complete lack of evidence of aggressive psychiatric care, similar to

20   that [plaintiff] received subsequently, during the period now at issue, which indicated that

21   [plaintiff's] psychiatric symptoms were not as severe between January 3, 2001 and July 31,

22   2003." (AR at 17).  The ALJ accepted Dr. Malancharuvil's analysis, stating:

23        If [plaintiff's] psychiatric symptoms were profound and debilitating

24        between January 3, 2001 and July 31, 2003, one would expect to

25        see psychiatric treatment and care more or less commensurate

26        with the psychiatric treatment and care he received subsequently,

27        when his symptoms were acknowledged to be debilitating . . .

28        Moreover, the complete lack of objective psychiatric evidence

1  demonstrating the presence of significant psychiatric limitations

2  precludes the undersigned from finding that more restrictive

3  mental functioning limitations were warranted during this period.

4  (AR at 17).  The ALJ concluded that the medical record did not reasonably support the

5  imposition of greater limitations and noted that the there were no psychiatric treatment records,

6  whatsoever, in the medical record from the subject period.  (AR at 16).

7        The ALJ noted that there was a single psychiatric report prepared by Dr. Villar in which

8  he claimed to have seen plaintiff on a monthly basis, but "he did not provide a single treatment

9  record despite being requested to do so." (Id.).  The ALJ noted that Dr. Villar had reported that

10  plaintiff experienced major depression, severe, and that he had poor attention, concentration

11  and memory and that he handled stress poorly.  (Id.).  The ALJ noted, however, that the State

12  Agency psychiatric consultative examiner, Linda Smith, M.D., did not make the same findings

13  as Dr. Villar.  (AR at 16; see AR at 229-34).  Specifically, the ALJ noted that, during the mental

14  status examination performed by Dr. Smith in June 2003, plaintiff demonstrated the ability to

15  perform serial threes, spell the word "world" forwards and backwards and was able to follow the

16  psychiatric conversation well.  (AR at 16; see AR at 233).  Plaintiff was also able to repeat six

17  digits forward and three digits backward, and was able to remember two of three items after five

18  minutes without hints, and all three items with a hint.  (AR at 16; see AR at 232).  The ALJ

19  stated, "While this might demonstrate some diminishment in memory, there is simply no clinical

20  evidence that [plaintiff's] memory, attention and concentration were 'poor' or otherwise

21  significantly diminished at this time." (AR at 16).  The ALJ, however, rejected Dr. Smith's

22  opinion that plaintiff had moderate limitations in his ability to understand, remember and

23  complete simple and complex commands and tasks, interact with supervisors and coworkers,

24  comply with work safety and attendance, respond to normal workplace changes and maintain

25  persistence and pace because the opinion was primarily based on plaintiff's allegation that he

26  was experiencing agoraphobia, a symptom which Dr. Smith acknowledged was not evidenced

27  during the examination and which Dr. Villar did not report or recognize.  (AR at 16-17; see AR

28

1   at 233, 234).[3]  The ALJ also noted that the State Agency evaluating psychiatric consultant had

2   offered a similar assessment, but disagreed that plaintiff had any limitations in his ability to

3   understand, remember and carry out simple instructions or simple work-related decisions, and

4   had not found a medically determined anxiety related disorder.  (AR at 17; see AR at 241, 248,

5   252-53).

6        The ALJ stated that Dr. Malancharuvil had the opportunity to consider the entire

7   psychiatric record, including plaintiff's presentation during the closed period subject to review,

8   as well as plaintiff's psychiatric decline thereafter, and was the only source who had the

9   opportunity to consider plaintiff's hearing testimony regarding his psychiatric symptoms during

10  the closed period.  (AR at 16).  Thus, the ALJ found that Dr. Malancharuvil was in the best

11  position to assess plaintiff's functional limitations during the relevant period "because of his

12  strong longitudinal understanding of [plaintiff's] psychiatric condition," which was "particularly

13  important because of the inconsistency in the psychiatric record[.]"  (Id.).

14       Plaintiff now argues that Dr. Villar's treatment records were relevant because he treated

15  plaintiff during the closed period under review, and that the ALJ failed to properly develop the

16  record by subpoenaing and obtaining the records.   (See Joint Stipulation at 4-5, 6-7).

17  Defendant argues that the ALJ discharged his duty to develop the record because he noted at

18  the December 19, 2006 hearing that, in July 2006, plaintiff's counsel was allowed additional

19  time to obtain medical evidence, and plaintiff's counsel had indicated that, aside from what was

20  already in the record, he had "[n]othing additional."[4]  (Joint Stipulation at 5).  Defendant further

21  argues that the ALJ was not required to issue a subpoena because plaintiff never requested

22  that he do so and had no reason to do so on his own initiative.  (Id.).

23

24  _____

25  [3]  The ALJ stated, "It appears that [Dr. Smith] merely took [plaintiff's] word regarding the nature and
severity of his anxiety symptoms, which, by regulation, is improper."  (AR at 17).

26  [4]  At the start of the December 19, 2006 hearing, the ALJ noted that the parties had previously met
in July 2006, but they had determined that not all of the medical evidence of record was in yet.
27  Additional time was allowed for plaintiff's counsel to "get the rest of the medical evidence of record[.]"
(AR at 523).  Plaintiff's counsel indicated that he had nothing additional aside from the exhibits in the
28  record at the time of the December 19, 2006 hearing.  (AR at 524).

In general, it is the duty of the claimant to prove to the ALJ that he or she is disabled. 20 C.F.R. §§ 404.1512(a), 416.912(a); Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). Thus, a claimant must bring to the ALJ's attention everything that supports a disability determination, including medical or other evidence relating to the alleged impairment and its effect on his or her ability to work.  20 C.F.R.§§ 404.1512(a), 416.912(a).  Accord 20 C.F.R. §§ 404.1512(c), 416.912(c) ("You must provide evidence . . . showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your claim.").

While the burden of proving disability is on the claimant, Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005), the ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered."  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation marks and citations omitted).  This duty exists even when the claimant is represented by counsel.  Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)); Mayes, 276 F.3d at 459; Tonapetyan, 242 F.3d at 1150.  When the evidence is ambiguous or the record is inadequate to allow for proper evaluation of the evidence, the ALJ's duty to develop the record is triggered and he or she must "conduct an appropriate inquiry."  See Mayes, 276 F.3d at 459-60; Tonapetyan, 242 F.3d at 1150; Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); see also Sims v. Apfel, 530 U.S. 103, 110-11 (2000) ("Social Security proceedings are inquisitorial rather than adversarial.  It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits[.]").  An ALJ can discharge his or her duty to develop the record "in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record."  Tonapetyan, 242 F.3d at 1150 (citations omitted); see also Smolen, 80 F.3d at 1288; cf. 20 C.F.R. §§ 404.950(d)(1), 416.1450(d)(1) ("When it is reasonably necessary for the full presentation of a case, an administrative law judge or a member of the Appeals Council may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses

10

and for the production of books, records, correspondence, papers, or other documents that are material to an issue at the hearing."). Moreover, an ALJ has a responsibility to develop "a complete medical history" and to "make every reasonable effort to help [the claimant] get medical reports from [his or her] own medical sources." 20 C.F.R. §§ 404.1512(d), 416.912(d).

In this case, the State Agency had made an initial request for information relevant to a determination of plaintiff's disability from Dr. Villar on April 22, 2003. (See AR at 173). See 20 C.F.R. §§ 404.1512(d)(1), 416.912(d)(1) (defining "every reasonable effort" as including making "initial request for evidence from [the claimant's] medical source"). The request submitted to Dr. Villar indicated that "[a] narrative report, copies of [his] records, or completion of any attached forms are equally satisfactory." (AR at 173) (emphasis added). On May 1, 2003, Dr. Villar completed the attached Mental Disorder Questionnaire Form, in which he diagnosed plaintiff with "major depression[,] severe" and opined that plaintiff's memory was "poor" and his concentration was "very poor," his concentration and attention were "markedly diminished" as a result of his depression, plaintiff could not complete tasks, "especially complicated ones," and plaintiff was unable to handle stress. (See AR at 174-78).

In his decision, the ALJ acknowledged that the Appeals Council had remanded the case with instructions to determine plaintiff's disability during the period prior to August 1, 2003, and, thus, he was required to determine whether plaintiff was disabled within the meaning of the Social Security Act from January 3, 2001, his alleged disability onset date, through July 31, 2003. (AR at 12-13; see AR at 68-69, 51). The ALJ noted that the "overwhelming majority" of the medical evidence in the record pertained to treatment plaintiff received after July 31, 2003, and that the medical record during the closed period was "very limited" and contained no psychiatric treatment records, whatsoever. (AR at 16). The ALJ noted that Dr. Villar had completed a psychiatric report, but had "not provid[ed] a single treatment record, despite being requested to do so." (AR at 16). The ALJ does not, however, state who requested the treatment records. Indeed, the State Agency's initial request for information from Dr. Villar indicated that the completed Mental Disorder Questionnaire Form would serve in lieu of, and was equally satisfactory to, copies of his records. (See AR at 173). Although the ALJ noted

Dr. Villar's opinion that plaintiff "experienced major depression, severe, and that he had poor attention, concentration and memory and that he handled stress poorly ([AR at 175-78])," the ALJ ultimately rejected Dr. Villar's opinion and accepted Dr. Malancharuvil's hearing testimony in determining that plaintiff's mental residual functional capacity was limited to moderately complex four and five step tasks in a habituated work environment and plaintiff was precluded from performing work in which he would be responsible for the safety of others and fast-paced work.  (AR at 15-17; see AR at 526-27).

Here, the Court finds that the evidence regarding plaintiff's mental functional limitations during the period between January 3, 2001 to July 31, 2003 was sufficiently inadequate so as to trigger the ALJ's duty to develop the record.  As discussed above, Dr. Villar was plaintiff's treating psychiatrist during the period under review.  Indeed, Dr. Villar's treatment of plaintiff spanned the closed period – the Mental Disorder Questionnaire Form indicated that he had treated plaintiff essentially on a monthly basis since January 18, 2001, and had last examined plaintiff on April 29, 2003.  (See AR at 173, 178).  Furthermore, although the ALJ rejected Dr. Villar's opinion in favor of Dr. Malancharuvil's assessment of plaintiff's mental functional limitations as reflected in his hearing testimony because "[o]nly Dr. Malancharuvil had the opportunity to consider the entire psychiatric record, including plaintiff's presentation during the closed period subject to review, as well as plaintiff's psychiatric decline, thereafter" and plaintiff's hearing testimony (see AR at 16 (finding that, "because of his strong longitudinal understanding of [plaintiff's] psychiatric condition, . . . Dr. Malancharuvil is in the best position to accurately assess [plaintiff's] functional limitations during the subject period")), the ALJ acknowledged that Dr. Malancharuvil specifically had testified that the record was sparse as to psychiatric evidence from January 2001 to August 2003.  (See AR at 525-26).  Additionally, plaintiff testified at the hearing that he had concentration and memory problems as far back as 2000.  (See AR at 538).  Dr. Villar's treatment records from the closed period were particularly important and probative in light of his long-term treatment of plaintiff, his assessment of plaintiff's mental functional limitations, the sparsity of other psychiatric evidence in the record

1   pertaining to the relevant period, and the fact that plaintiff was found to have met the
2   requirements of Listing 12.04 and was disabled as of August 1, 2003.

3        Moreover, although it appears that the ALJ had previously continued the hearing to allow
4   plaintiff's counsel to "get the rest of the medical evidence of record," (AR at 523), there is no
5   indication that the ALJ continued the hearing specifically to allow counsel to obtain Dr. Villar's
6   treatment notes, or that he made any effort to recontact Dr. Villar regarding the opinions he
7   expressed in the Mental Disorder Questionnaire Form, subpoena his treatment records, or
8   make any further inquiry to Dr. Villar.  "When the evidence . . . receive[d] from [a claimant's]
9   treating physician or psychologist or other medical source is inadequate . . . to determine
10  whether [the claimant is] disabled . . . additional information [is needed] to reach a
11  determination or a decision."  20 C.F.R. §§ 404.1512(e), 416.912(e).  To obtain additional
12  information:

13           [The ALJ] will first recontact your treating physician or psychologist
14           or other medical source to determine whether the additional
15           information we need is readily available.  We will seek additional
16           evidence or clarification from your medical source when the report
17           from your medical source contains a conflict or ambiguity that must
18           be resolved, the report does not contain all the necessary
19           information, or does not appear to be based on medically
20           acceptable clinical and laboratory diagnostic techniques.  We may
21           do this by requesting copies of your medical source's records, a
22           new report, or a more detailed report from your medical source,
23           including your treating source, or by telephoning your medical
24           source.

25  20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1).  Thus, if the ALJ needed to obtain more specific
26  information regarding Dr. Villar's opinion as reflected in the Mental Disorder Questionnaire
27  Form, including his treatment records, the ALJ should have developed the record further.  The
28  ALJ has a duty to conduct an appropriate inquiry if the ALJ determines that it is necessary to

know the basis of a treating physician's opinion.  See Smolen, 80 F.3d at 1288 ("If the ALJ thought he needed to know the basis of [the treating physician's] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them."); see also Social Security Ruling ("SSR") 96-5p[5] ("Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion."); Cleveland v. Apfel, 99 F. Supp. 2d 374, 380 (S.D.N.Y. 2000) (remanding case to ALJ for failure to re-contact treating physician before rejecting opinion and stating, "When the opinion submitted by a treating physician is not adequately supported by clinical findings, the ALJ must attempt, sua sponte, to develop the record further by contacting the treating physician to determine whether the required information is available."); Corey v. Barnhart, 2002 WL 663130, at *5 (S.D. Ind. Mar. 14, 2002) ("The ALJ discredited Dr. Ciulla's opinion because of the lack of objective findings, and there is no indication in the record that the ALJ recontacted Dr. Ciulla to find out whether he had any findings or other information to support his opinion.  The ALJ's failure to do so was error."). Accordingly, under the circumstances of this case, the Court concludes that the ALJ did not satisfy his independent duty to fully and fairly develop the record.

        Defendant argues that, regardless of the ALJ's failure to obtain Dr. Villar's treatment records, the ALJ properly rejected Dr. Villar's opinion regarding plaintiff's mental functional limitations because it conflicted with Dr. Smith's findings.  (Joint Stipulation at 6).  The medical opinion of a treating physician, however, is entitled to special weight because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual."  See 20 C.F.R. §§ 404.1527, 416.927; Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998); Lester

_____

        [5] Social Security Rulings are issued by the Commissioner to clarify the Commissioner's regulations and policies.  Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991).  Although they do not have the force of law, they are nevertheless given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1  v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended) (the opinions of treating physicians

2  should be given more weight than the opinions of doctors who do not treat the claimant);

3  McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).  A finding that a treating physician's

4  opinion is not well supported by medically acceptable clinical and laboratory diagnostic

5  techniques, or is not consistent with the other substantial evidence in the record, only means

6  that the opinion is not entitled to controlling weight.  SSR 96-2p ("A finding that a treating

7  source's medical opinion is not entitled to controlling weight does not mean that the opinion is

8  rejected.").  The opinions rendered by treating physicians are still entitled to deference and

9  must be weighed using all of the factors provided in 20 C.F.R. Sections 404.1527 and 416.927,

10  such as the length of the treatment relationship, frequency of examination, and the nature and

11  extent of the treatment relationship.  SSR 96-2p; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

12  Thus, even if the ALJ had found that Dr. Villar's opinion was inconsistent with Dr. Smith's

13  opinion, such a finding would mean only that Dr. Villar's opinion is not entitled to "controlling

14  weight," not that it should be rejected.  Furthermore, the ALJ ultimately rejected Dr. Smith's

15  opinion in favor of that of Dr. Maluncharuvil's assessment of plaintiff's mental functional

16  limitations during the closed period.  (See AR at 16-17).

17  **C.    Remand is Required to Remedy Defects in the ALJ's Decision**

18        The choice of whether to reverse and remand for further administrative proceedings, or

19  to reverse and simply award benefits, is within the discretion of the Court.  McAlister v. Sullivan,

20  888 F.2d 599, 603 (9th Cir. 1989).  Remand is appropriate where additional proceedings would

21  remedy defects in the ALJ's decision, and where the record should be developed more fully.

22  Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990).

23        Here, the Court finds remand appropriate.  The ALJ failed to fully develop the record

24  regarding plaintiff's mental functional limitations between January 3, 2001 and July 31, 2003,

25  closed period under review.  The ALJ's failure to develop the record constitutes error.  On

26  remand, the ALJ must develop the record fully and fairly by contacting Dr. Villar to obtain the

27

28

15

records documenting plaintiff's treatment during the closed period, or, if necessary, by subpoenaing the records.[6]

**ORDER**

The Court, therefore, VACATES the decision of the Commissioner of Social Security Administration and REMANDS this action for further administrative proceedings consistent with this Memorandum Opinion and Order.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: May 26, 2009

_____/s/ Jennifer T. Lum_____
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE

---

[6] In the Joint Stipulation, plaintiff also contends that the ALJ misrepresented the record and failed to properly consider the consultative examining psychiatrist's evaluation, and failed to make proper credibility findings, consider plaintiff's treating psychiatrist's opinion, and pose a complete hypothetical to the vocational expert.  As explained above, however, the ALJ's error in failing to develop the record with regard to plaintiff's treatment records during the closed period under review constitutes sufficient reason to remand this case.  Moreover, depending on the outcome of the proceedings on remand, the ALJ will have an opportunity to address plaintiff's other arguments again.  In any event, the ALJ should consider all the issues raised by plaintiff in the Joint Stipulation when determining the merits of plaintiff's case on remand.